UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>UBALDO BALDERRAMA-MARQUEZ,<br><br>Defendant. | 5:06-CR-50092-KES<br><br><br>ORDER ADOPTING REPORT AND RECOMMENDATION AND DENYING MOTION TO DISMISS |

Defendant, Ubaldo Balderrama-Marquez, moves to dismiss the indictment in the above-entitled matter on the ground that his Sixth Amendment right to speedy trial was violated by the 17-and-a-half-year delay between his indictment and arrest. Docket 25. The United States opposes the motion. Docket 27.

The court referred Balderrama-Marquez's motion to a Magistrate Judge under 28 U.S.C. § 636(b)(1)(B). After holding an evidentiary hearing, the Magistrate Judge recommended Balderrama-Marquez's motion to dismiss be denied. Docket 36. Balderrama-Marquez timely filed objections to the Report and Recommendation. Docket 40. Balderrama-Marquez makes three objections to the Report and Recommendation.[1] *Id.* at 5-12.

---

[1] Balderrama-Marquez actually recites 4 objections, but his first objection is simply to the Magistrate Judge's evaluation of the Speedy Trial Act's application to the situation. Docket 40 at 5. Balderrama-Marquez states that he did not assert that the Speedy Trial Act has been violated. *See id.* And he

1

After a de novo review of the Report and Recommendation and the record, the court takes up each of Balderrama-Marquez's objections in turn.

## LEGAL STANDARD

This court's review of a magistrate judge's report and recommendation is governed by 28 U.S.C. § 636 and Rule 72 of the Federal Rules of Criminal Procedure. The court reviews de novo any objections to the magistrate judge's recommendations with respect to dispositive matters that are timely made and specific. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 72(c). Because motions to dismiss on Sixth Amendment speedy trial grounds are considered dispositive matters, a magistrate judge's recommendation regarding such a motion is subject to de novo review. 28 U.S.C. § 636(b)(1); *see also United States v. Broussard*, 2021 WL 4191435, at *3, 9 (D. Minn. Sept. 15, 2021). In conducting a de novo review, this court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also United States v. Craft*, 30 F.3d 1044, 1045 (8th Cir. 1994).

## FACTS

After a de novo review of the transcript of the evidentiary hearing and the exhibits received into evidence, the court adopts the facts as set forth in the Report and Recommendation. Balderrama-Marquez did not file any objections to the facts.

---

objects to the fact that the Magistrate Judge conducted the evaluation at all. *Id.* Thus, because the objection does not go to the underlying facts or legal conclusions, the court overrules it.

## DISCUSSION

The Sixth Amendment guarantees a criminal defendant the right to a speedy trial. U.S. Const. amend. VI. The Sixth Amendment's speedy trial right attaches at the time the defendant is arrested or indicted, "whichever comes first, and continues until the trial commences." *United States v. Sims*, 847 F.3d 630, 634 (8th Cir. 2017) (citation omitted).

The speedy trial right cannot "be quantified into a specified number of days or months[,]" *Barker v. Wingo,* 407 U.S. 514, 523 (1972), nor does it completely hinge on a defendant's explicit request for a speedy trial, s*ee id.* at 523-29. Rejecting "inflexible approaches," *Barker* concocted a "balancing test, in which the conduct of both the prosecution and the defendant are weighed." *Id*. at 529-30. *Barker* established that in determining whether there has been a Sixth Amendment violation, courts must balance four factors: (1) the length of delay; (2) the reason for the delay; (3) defendant's assertion of his right; and (4) prejudice. *Id.* at 530.

The Magistrate Judge evaluated each of the four *Barker* factors. *See* Docket 36. Balderrama-Marquez's objections go to the second, third, and fourth factors.[2] *See* Docket 40. First, Balderrama-Marquez argues that the

---

[2] The first *Barker* factor serves as a double inquiry that requires the court to (1) determine whether the delay is sufficiently lengthy to be presumptively prejudicial and trigger a speedy trial analysis; and, if triggered, (2) evaluate whether the delay was uncommonly long. *United States v. Cooley*, 63 F.4th 1173, 1178 (8th Cir. 2023). Here, the roughly 17-and-one-half year delay between indictment and arrest is undoubtedly sufficient to trigger the analysis. *See* Docket 37 at 27 (noting the length of the delay); *Doggett v. United States,* 505 U.S. 647, 652 n.1 (1992) (stating that a post-indictment delay of one year is generally sufficient to meet the threshold inquiry of presumptively prejudicial

3

Magistrate Judge erred in finding that the United States had not negligently or deliberately delayed in prosecuting Balderrama-Marquez because the facts indicated that he knew of the indictment and purposely evaded prosecution. *Id.* at 6 (citing Docket 36 at 9). Second, he objects to the Magistrate Judge's finding that he failed to timely assert his speedy trial right by remaining in Mexico. *Id.* at 9. And third, Balderrama-Marquez objects to the Magistrate Judge's finding that he must show actual prejudice as a result of the post-indictment delay. *Id.* at 10. The court will address each objection in turn.

I. **Reason for delay: whether the government or Balderrama-Marquez was more to blame for the post-indictment delay**

Balderrama-Marquez objects to the Magistrate Judge's finding that the "nearly 18-year delay in prosecution [was] entirely [attributable] to Balderrama-Marquez." Docket 40 at 6. Balderrama-Marquez argues that the facts indicate that the government was "gross[ly] negligent" in making no effort to arrest him unless he reentered the United States. *Id.* at 6, 8.

Under *Barker*, the court "consider[s] the reasons for the delay and evaluate[s] whether the United States or criminal defendant is more to blame." *See United States v. Flores-Lagonas*, 993 F.3d 550, 563 (8th Cir. 2021) (citation omitted). In making this evaluation, courts "weigh an intentional delay by the government 'heavily against it.' " *United States v. Erenas-Luna*, 560 F.3d 772,

---

delay). Additionally, it is clear that this delay was uncommonly long. *See United States v. Erenas-Luna*, 560 F.3d 772, 776-77 (8th Cir. 2009) (holding a 3-year delay between indictment and arrest weighed in the defendant's favor); *see also* Docket 27 at 4 (the government not contesting that the first factor is satisfied).

4

777 (8th Cir. 2009) (quoting *United States v. Walker,* 92 F.3d 714, 717 (8th Cir. 1996)). While negligence is weighed "less heavily" against the United States, it is still regarded "as a considerable factor in the weighing process." *Id.* (quoting *Walker,* 92 F.3d at 717). Delay caused by the defense is correspondingly weighed against it. *United States v. Cooley*, 63 F.4th 1173, 1178 (8th Cir. 2023).

Courts are entitled to weigh heavily against the defendant the fact that he "attempted to conceal his whereabouts while he was a fugitive by using a false name and false identification." *Walker,* 92 F.3d at 718. A court need not ignore a defendant's fugitivity, but even if a defendant flees to avoid prosecution, the government can be faulted for the delay if it failed to use " 'reasonable diligence' " to locate him. *See Doggett v. United States,* 505 U.S. 647, 656-57 (1992). "To satisfy the requirement of reasonable diligence, the government does not need to make heroic efforts to pursue a suspect, but it must at least make a serious effort." *United States v. Velazquez*, 749 F.3d 161, 180 (3d Cir. 2014) (internal citations omitted); *see also Rayborn v. Scully,* 858 F.2d 84, 90 (2d Cir. 1988) ("There is no requirement that law enforcement officials make heroic efforts to apprehend a defendant who is purposefully avoiding apprehension.") (cleaned up).

Balderrama-Marquez argues that the government was negligent in failing to pursue him while he was in Mexico or attempting to extradite him. Docket 40 at 6-7. More specifically, Balderrama-Marquez likens his situation to that in *United States v. Mendoza*, where the Ninth Circuit found that the defendant's

speedy trial rights were violated because the government neglected "to make some effort to notify [the defendant] of the indictment, or otherwise continue to actively attempt to bring him to trial." *United States v. Mendoza*, 530 F.3d 758, 763 (9th Cir. 2008). But Balderrama-Marquez's reliance on *Mendoza* is misplaced. *Mendoza* is representative of a category of speedy trial cases that is separate from Balderrama-Marquez's case. *See United States v. Fernandes*, 618 F. Supp. 2d 62, 70 (D.D.C. 2009) (distinguishing speedy trial cases into categories based on a defendant's knowledge of the indictment).

In the category of cases like *Mendoza*, where the defendant was unaware of the indictment, courts generally fault the government for the delay. *See id.*; *see also Doggett*, 505 U.S. at 651–58 (finding a speedy trial violation where the defendant was unaware of the indictment, left the country for unrelated reasons, and made no efforts to conceal his location); *United States v. Heshelman*, 521 Fed. Appx. 501, 505–11 (6th Cir. 2013) (holding that the government's failure to pursue extradition of a suspect living in a foreign country, where the suspect was not informed of the charges against him, established a speedy trial violation).

Contrastingly, in the category of cases where the defendant knew of the indictment and fled the country to avoid prosecution, the defendant is faulted for the delay. *See Walker*, 92 F.3d at 718 ("[W]here a defendant knows of the potential charges against him a lengthy time before he is apprehended, this factor will be weighed heavily against him.") (cleaned up); *United States v. Arceo,* 535 F.3d 679, 685–86 (7th Cir. 2008) (placing blame for the delay was

6

placed on the defendant, despite the government's four-year post indictment delay, because the defendant fled the jurisdiction after learning of the charges against him); *United States v. Sandoval*, 990 F.2d 481, 485 (9th Cir. 1993) (holding that there was no speedy trial violation, despite a 21-year post-indictment delay because the defendant "was well aware of the indictment against him [and] skipped bail and became a fugitive to avoid prosecution"); *United States v. Ramos*, 420 F. Supp. 2d 241, 250 (S.D.N.Y. 2006) (finding that the defendant was more to blame for a pre-arrest delay, despite government negligence, because he fled the country to avoid prosecution).

Balderrama-Marquez argues against the application of the second category of cases, because "[n]o evidence was adduced in this case from which to extrapolate that [he] had knowledge of his sealed indictment." Docket 40 at 9. Along that same vein, Balderrama-Marquez points to *United States v. Rodriguez-Valencia* for the proposition that his knowledge of the indictment should not be inferred. *Id.* at 8. In *Rodriguez-Valencia*, the Eighth Circuit declined to infer knowledge despite the fact that the defendant had confessed to law enforcement officers during an interview two years prior to the indictment. Docket 40 at 8; *United States v. Rodriguez-Valencia*, 753 F.3d 801, 806 (8th Cir. 2014). But the Eighth Circuit has expressed a willingness to infer that a defendant had notice of an indictment based on the circumstances of the case. *See Walker*, 92 F.3d at 718. For example, the court in *United States v. Walker* inferred the fugitive defendant had knowledge of the indictment based on his communications with his co-defendants, who informed him that the

7

conspiracy had been infiltrated, and the jailors of the county jail where he was housed prior to his fleeing had been informed of new federal charges. *Id.* at 719.

Here, the facts in the record are sufficient for the court to infer that Balderrama-Marquez had knowledge of the indictment against him. First, on April 17, 2002, after Balderrama-Marquez had communicated with and sold narcotics to undercover officers on multiple occasions, Balderrama-Marquez met with officers, agreed to acquire drugs, and then suddenly stopped responding to the undercover officers' attempts to contact him—indicating at least some knowledge on Balderrama-Marquez's part that he was under investigation. *See* Docket 37 at 6-7.

Second, as in *Walker*, Balderrama-Marquez's relationships with his co-defendants similarly implies Balderama-Marquez had the requisite knowledge. Several of Balderrama-Marquez's family members were believed to be involved in the alleged conspiracy and were actively being investigated at the same time as Balderrama-Marquez. *Id.* at 9. In fact, Balderrama-Marquez's two brothers, Jose and Miguel, were indicted at the same time as Balderrama-Marquez and warrants were issued for all three brothers. *Id.* Unlike Balderrama-Marquez, the government was able to locate and arrest Jose and Miguel shortly after the warrants were issued. *Id.* at 16. But each of the brothers eventually fled. *Id.* at 16-17. Miguel entered a plea of guilty and fled after being released pending a sentencing date. *Id.* Jose fled following his release after a pretrial conference,

shortly before his upcoming trial. *Id.* at 17. New warrants were issued for Jose and Miguel, but the brothers were never found. *Id.* at 17-18.

From these facts, it can be inferred that Balderrama-Marquez had notice of the indictment against him. Although the indictment was sealed as to him, the indictments of Balderrama-Marquez's alleged co-conspirators and brothers—both of whom not only appeared in court but progressed almost entirely through their cases—were not sealed. It is a logical to assume that the brothers would inform their other brother, Balderrama-Marquez, that they were facing charges on the conspiracy that Balderrama-Marquez was also believed to be a part of. *See United States v. Balderrama-Marquez et al*, 5:06-cr-50093-KES, Docket 231 (Jose Balderrama-Marquez's signed factual basis statement stating Balderrama-Marquez was dealing cocaine to individuals in South Dakota until late 2003 when he "came to believe that he was being watched by law enforcement officers and left the country" and after Balderrama-Marquez left, he "instructed his customers to go to [Jose]").[3] This, combined with Balderrama-Marquez's own awareness of at least some governmental interest

---

[3] Although Jose Balderrama-Marquez's factual basis statement is not part of the record of this case, it is a publicly available record that it is available through Pacer, the federal court case filing and record system. Thus, the court takes judicial notice of it. *See Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007) (court may take judicial notice of public records); *Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005) (court "may take judicial notice of judicial opinions and public records"); *see also Plank v. St. Anthony's Med. Ctr.*, 2019 WL 354871, at *1 (E.D. Mo. Jan. 29, 2019) (taking judicial notice of court filings available through Pacer); *Miller By A.M. v. Dorsey*, 2018 WL 4854180, at *1 n.4 (D. Neb. Oct. 5, 2018) (same).

in his drug selling activities, as evidenced from his disappearance in the wake of a controlled buy, is sufficient to show that Balderrama-Marquez knew of the indictment against him. *See id.* Thus, the court finds that Balderrama-Marquez knew of the indictment against him and actively avoided apprehension and prosecution.

But even in light of Balderrama-Marquez's fugitivity, the government must have exercised "reasonable diligence" to locate him. *See Doggett,* 505 U.S. at 656-57. Balderrama-Marquez argues that the government failed to meet this burden because it indicted him after he had already left for Mexico and the government made no attempt to extradite him from Mexico. Docket 40 at 6-7; *see also* Docket 37 at 18-19 (Cooper testifying that no one attempted to extradite Balderrama-Marquez from Mexico because they believed it to be futile, given previous denied extradition requests).

As evidenced by *Rodriguez-Valencia,* however, the fact that a defendant left the country prior to being indicted, is not dispositive so long as the government made reasonable efforts to locate him. *Rodriguez-Valencia,* 753 F.3d at 806-07 (finding the government was not negligent in its post-indictment apprehension of the defendant because, although the defendant left the country prior to the filing of the indictment, in the six years between indictment and arrest the government searched for him via database inquiries, phone record monitoring, and contacting known associates). Moreover, extradition is not necessary to show reasonable diligence on behalf of the government. *See In re Kashamu,* 769 F.3d 490, 494 (7th Cir. 2014); *see also*

*Ramos*, 420 F. Supp. 2d at 247 ("[A] formal request for extradition need not be made before due diligence can be found to exist.") (citation omitted). In *United States v. Wangrow*, the Eighth Circuit explained that "the failure of the government to extradite [the defendant] did not violate [the defendant's] right to speedy trial" because the defendant had fled the United States and attempted to conceal his identity in Mexico, indicating that he did not want to be extradited. *United States v. Wangrow*, 924 F.2d 1434, 1437-38 (8th Cir. 1991) (finding no speedy trial violation, despite a 19-year post-indictment delay, where the defendant had avoided detection from American authorities while in Mexico).

Here, the efforts made by the government are sufficient to show reasonable diligence. After Balderrama-Marquez seemingly disappeared following a controlled buy, law enforcement continued to attempt to contact him. Docket 37 at 7-8. When that was unsuccessful, law enforcement continued to monitor his last known address, residences of his family members, and places he was known to frequent. *Id.* at 8. Law enforcement was never able to locate or get into contact with Balderrama-Marquez and they believed he had gone to Mexico. *Id.* at 18 (Cooper stating that after all of his leads dried up, he believed Balderrama-Marquez had returned to Mexico because Balderrama-Marquez was a Mexican citizen and several people Cooper interviewed also stated their belief that he was in Mexico).

In 2006, after the indictment was filed against Balderrama-Marquez (and corresponding indictments and warrants were issued in relation to his

11

brothers), law enforcement entered the warrant for Balderrama-Marquez's arrest in the National Crime Information Center (NCIC), a national database. *Id.* at 10-13. Thereafter, federal law enforcement in South Dakota reached out to law enforcement in Denver, where Balderrama-Marquez had lived prior to disappearing. *Id.* at 6, 14. Denver authorities were provided with all of the "leads" the government had regarding Balderrama-Marquez, including known residences, and were asked to complete physical surveillance to find Balderrama-Marquez. *Id.* at 14. Here in South Dakota, officers searched public records, utility records, school records, child support records, and marriage records in hopes of discovering Balderrama-Marquez's location. *Id.* Officers also completed mail covers, trash pulls, and contacted ICE, the Social Security Administration, and the former employers of Balderrama-Marquez and his brothers. *Id.* at 14-15. These searches continued over several years until they all turned up the same, outdated information. *Id.* at 15-16.[4] Additionally, officers continued to make sure, at least on a yearly basis, that the warrant was valid and the United States Attorney's office was still interested in prosecuting the case. *Id.* at 13. The warrant was maintained in the NCIC database throughout the 17-and-a-half-year period. *Id.*

It is important to note that while the government believed Balderrama-Marquez had fled to Mexico, there are no facts in the record to indicate that it knew exactly where to find Balderrama-Marquez in the country. *See id.* at 18

---

[4] Cooper also mentioned that other resources, such as a fugitive investigative unit, may have been employed to search for Balderrama-Marquez, but he was unsure. Docket 37 at 19.

12

(stating only that the defendant was believed to be in Mexico). When faced with a similar situation, the Eighth Circuit found that a thirty-seven-month post-indictment delay did not offend the defendant's speedy trial rights because the defendant fled the state soon after he was indicted and went to Los Angeles. *See Walker,* 92 F.3d at 715-16, 719. The *Walker* court recognized that while the government knew the defendant had run to Los Angeles, it never obtained information as to where exactly the defendant was in Los Angeles. *Id.* at 718. The government did, however, regularly check the National Crime Information Center (NCIC) database to see if the defendant had been located. *Id.* Further, the court distinguished Walker's actions from those of other defendants in Supreme Court precedent by noting that "Walker point[ed] to no evidence that he lived openly under his own name or that by running his name through a credit bureau the government would have discovered his whereabouts." *Id.* (distinguishing *Doggett,* 505 U.S. at 649-52). As such, the court found that the government had not been negligent in pursuing the defendant. *Id.*

Similarly, here, the government knew only that Balderrama-Marquez was somewhere within Mexico and there is no evidence that he lived openly under his name or that a simple database search would have revealed his location. *See also Ramos*, 420 F. Supp. 2d at 247 (finding no speedy trial violation where the government knew the defendant was in a foreign country but did not know his precise location in that country). Thus, the court finds that the government exercised reasonable diligence in attempting to bring Balderrama-Marquez to a

13

speedy trial and overrules Balderrama-Marquez's objection to the Report and Recommendation on this issue.

## II.     Assertion: whether Balderrama-Marquez failed to timely assert his speedy trial right

Balderrama-Marquez objects to the Magistrate Judge's finding that he failed to assert his speedy trial right under the third *Barker* factor. Docket 40 at 9. Balderrama-Marquez states that because he did not know of the indictment against him, he cannot be faulted for failing to assert his right. *Id.*

The third *Barker* factor requires courts to consider "whether in due course the defendant asserted his right to a speedy trial." *Erenas-Luna*, 560 F.3d at 778 (citation omitted). A defendant's assertion of his speedy trial right is "entitled to strong evidentiary weight . . . [and] failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Barker,* 407 U.S. at 531-32; *see also Doggett,* 505 U.S. at 653-54. Where the delay complained of was post-indictment and pre-arrest, the defendant's "post-arrest assertion of his speedy-trial right has little bearing on his claim." *Erenas-Luna*, 560 F.3d at 778. Instead, courts look to whether a defendant asserted his speedy trial right during the delay. *See id.*

So, generally, when "the defendant was unaware of his indictment until his arrest but later raised a speedy-trial claim . . . the third *Barker* factor had no application and merely '[cannot] be weighed against [the defendant].' " *Id.* (quoting *United States v. Richards,* 707 F.2d 995, 997 (8th Cir.1983) (second alteration in original)). But courts have found that where a defendant does

14

know of the indictment against him, and the delay is attributable to him, then he has waived his right to a speedy trial. *Wangrow*, 924 F.2d at 1437-38 ("Since the delay here is attributable to [the defendant], he has waived his right to a speedy trial.").

As noted above, the court determined that Balderrama-Marquez was on notice of the indictment against him, and the post-indictment delay was attributable to his fugitivity. Thus, the court finds that Balderrama-Marquez failed to timely assert his speedy trial right during the delay. As such, the court overrules Balderrama-Marquez's objection to the Report and Recommendation on this issue.

### III.  Prejudice: whether Balderrama-Marquez must show actual prejudice

Balderrama-Marquez objects to the Magistrate Judge's determination that Balderrama-Marquez must show actual prejudice in order for the fourth *Barker* factor to weigh in his favor. Docket 40 at 10. Balderrama-Marquez has not shown any actual or specific prejudice. *See id.*; Docket 26. Instead, he argues that the length of the delay allows the court to presume prejudice. *See* Docket 40 at 10-11.

"The final *Barker* factor—prejudice—considers 'whether the defendant suffered prejudice as a result of the delay.' " *Rodriguez-Valencia*, 753 F.3d at 807 (quoting *Erenas-Luna*, 560 F.3d at 778). This factor is assessed "in the light of the interests of defendants which the speedy trial right was designed to protect (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will

15

be impaired." *Id.* (cleaned up and citation omitted). The most important factor is whether the delay has impaired the defendant's defense, through the loss of evidence or key witnesses. *See United States v. Jenkins-Watts*, 574 F.3d 950, 967 (8th Cir. 2009); *United States v. Sprouts*, 282 F.3d 1037, 1043 (8th Cir. 2002).

"The extent to which a defendant must demonstrate prejudice under this factor depends on the particular circumstances." *Erenas-Luna,* 560 F.3d at 778. Generally, if the government exercised reasonable diligence in pursuing the defendant, actual prejudice is required. *Doggett,* 505 U.S. at 656; *United States v. Brown,* 325 F.3d 1032, 1035 (8th Cir. 2003). When the delay is caused by the government's negligence, however, the court may presume prejudice if the delay was excessive. *Doggett,* 505 U.S. at 656-58.

Balderrama-Marquez's argument is entirely premised on the assertion that because the government was negligent in its efforts to locate him, he may rely on the presumption of prejudice created by the over 17-year post-indictment delay. Docket 40 at 10-11; Docket 26 at 7-8. But the court already found the government exercised reasonable diligence and that Balderrama-Marquez, rather than the government, is at fault for the delay. Thus, Balderrama-Marquez is required to show actual prejudice resulted from the delay. He has failed to do so; therefore, Balderrama-Marquez's objection to the Magistrate Judge's determination on the fourth *Barker* factor is overruled.

## CONCLUSION

Based on the foregoing, it is

ORDERED that the Report and Recommendation (Docket 36) is adopted in its entirety and Balderrama-Marquez's motion to dismiss (Docket 25) is denied.

Dated January 15, 2025.

BY THE COURT:

/s/ *Karen E. Schreier*

KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE
